IN THE CIRCUIT COURT, FOURTH JUDICIAL
CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA.

CASE NO.: 16-2019-CA-007070

DIVISION: CV-C

KALIA LUCAS
and KHLAYAH WRIGHT,

      Plaintiffs,

v.

DUVAL COUNTY SCHOOL BOARD,
and MICHEAL P. EDWARDS,
in his individual capacity.

      Defendants.
_____/

## FOURTH AMENDED COMPLAINT

Plaintiffs, Khlayah Wright and her mother Kalia Lucas, sue Defendants, Duval County School Board, and Micheal P. Edwards and allege:

### Parties, Jurisdiction and Venue

1. This is an action for damages that exceed $30,000.00, exclusive of costs and interest.

2. Venue is proper in Duval County because the acts and/or omissions giving rise to this litigation occurred here.

3. At all times material, Plaintiff Khlayah Wright was a resident of Duval County, Florida.

4. At all times material, Plaintiff Kalia Lucas was a resident of Duval County, Florida.

5. At all times material, Plaintiff Kalia Lucas, was the parent of Khlayah Wright.

6. Defendant Duval County School Board ("DCSB") is a political subdivision that is responsible for the control, operation, organization, management, administration and supervision of public schools in Duval County, Florida.

7. Duval County School Police Department is, and at all times material was, the police arm of Defendant Duval County School Board.

8. At all times material, Defendant Micheal Edwards was employed by Duval County School Board as the director of the Duval County School Police Department.

9. Defendant Edwards engaged in the conduct complained of in the course and scope of his employment as the director of the Duval County School Police Department and under the color of law. Defendant Edwards is sued in his individual capacity.

10. As of August 24, 2018, Khlayah Wright was a student enrolled at Robert E. Lee High School.

11. Robert E. Lee High School (hereinafter "Lee H.S.") is, and was at all times material, located within Jacksonville, Duval County, Florida.

12. William M. Raines High School (hereinafter, "Raines H.S.") is, and was at all times material, located in Jacksonville, Florida.

13. Defendant Duval County School Board is the proper entity for actions and omissions constituting negligence by employees and agents of both Raines H.S. and Lee H.S.

14. All conditions precedent to the filing of this action have been met. Specifically, Plaintiff Khlayah Wright satisfied the pre-suit notice requirements in 768.28(6), *Fla. Stat.*, through written notice to the City of Jacksonville, the Florida Department of Financial Services, and Defendant School Board on September 30, 2020. Plaintiff Kalia Lucas satisfied the pre-suit notice

requirements in 768.28(6), *Fla. Stat.*, through written notice to the City of Jacksonville, the Florida Department of Financial Services, and Defendant School Board on September 28, 2020.

## General Allegations

15. On or about August 24, 2018, Khlayah Wright attended a football game between Raines H.S. and Lee H.S.

16. The football game between Raines H.S. and Lee H.S. on August 24, 2018 was held at Raines H.S.

17. The football game between Raines H.S. and Lee H.S. was a regular school-sponsored activity, within the Jurisdiction of the School Board.

18. After the football game ended, an assailant armed with a gun entered the grounds of Raines H.S. and opened fire into a crowd of spectators who were in the process of leaving the area of the football field.

19. Khlayah Wright was in the crowd of spectators who were in the process of leaving the area of the football field at Raines H.S.

20. The gunfire struck and injured Khlayah Wright.

21. Khlayah Wright was on the Raines H.S. premises at the time she was struck by the gunfire.

22. The armed assailant was on the Raines H.S. premises at the time he fired the shot that struck Khlayah Wright.

23. The gunfire and Khlayah Wright's injury occurred within 30 minutes after the end of the aforementioned football game.

24. Khlayah Wright suffered a permanent total disability as a result of the shooting. Specifically, a November 11, 2019 Social Security Administration letter to Kalia Lucas regarding

her daughter states on page 1: "As of July 2019 she met all the rules to be eligible for SSI based on being disabled." Page 2 of the letter states: "She was found disabled on July 2, 2019."

### COUNT I – Negligence of Duval County School Board
### (general negligence, Wright v. DCSB)

25. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-24.

26. At all times material, Defendant owed a general duty of supervision to the students placed within its care, including Khlayah Wright

27. Defendant also owed a duty, at all times material, to protect its students, including Khlayah Wright, from assaults by other students and non-students.

28. Defendant breached its general duty of supervision and breached its duty to protect Khlayah Wright from assaults by other students and non-students.

29. As a direct and proximate result, Khlayah Wright suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of ability to earn money, and aggravation of a previously existing condition.

30. Khlayah Wright's losses are either permanent or continuing in nature and Khlayah Wright will suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment for damages against Defendant and further demands trial by jury on all issues.

### COUNT II – Negligence of Duval County School Board
### (premises liability, Wright v. DCSB)

31. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-25.

32. At all times material, Khlayah Wright was an invitee on the Raines H.S. premises.

33. Prior to the shooting, Defendant was on notice of the shooter's violent nature and past dangerous actions.

34. Defendant knew or should have known that the shooter was a danger to any person lawfully on the Raines H.S. premises.

35. Violent actions by the shooter, including the shooting that occurred on the Raines H.S. premises, were reasonably foreseeable to Defendant.

36. At all times material, Defendant had a duty to protect invitees, including Khlayah Wright, from foreseeable intentional or criminal acts of students and non-students.

37. Defendant breached its duty to protect invitees, including Khlayah Wright, from a foreseeable intentional or criminal act.

38. As a direct and proximate result, Khlayah Wright suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of ability to earn money, and aggravation of a previously existing condition.

39. Khlayah Wright's losses are either permanent or continuing in nature and Khlayah Wright will suffer these losses in the future.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendant and further demands trial by jury on all issues.

### COUNT III – (Prior claim against ESA, which has been dismissed)

### COUNT IV – Plaintiff Kalia Lucas' Claim for Medical Expenses
### (Lucas v. DCSB)

40. Plaintiffs re-allege paragraphs 1-39 as if fully set out herein.

41. At all times material, Plaintiff Kalia Lucas was the mother of Plaintiff Khlayah Wright.

42. As a direct and proximate result of the negligence of both Defendants, Plaintiff Kalia Lucas incurred expenses of hospitalization, medical and nursing care and treatment for Plaintiff Khlayah Wright until age 18.

5

WHEREFORE, Plaintiff Kalia Lucas demands judgment for damages against Defendants and further demands trial by jury on all issues.

### COUNT V – 42 U.S.C. § 1983 Civil Rights Action
### (Wright v. Edwards in his individual capacity)

43. Plaintiff re-alleges paragraphs 1-24 as if fully set out herein.

44. As previously alleged, Defendant Edwards was the director the Duval County School Police Department and began serving in that role in 2015.

45. During his time as the director of DCSP, Director Edwards did not maintain accurate records of criminal activity at Duval County Schools.

46. A grand jury investigated Defendant DCSB and Defendant Edwards and found: "Chief Micheal P. Edwards, has actually issued both written and verbal orders to the members of his department to intentionally mislabel and fail to report crimes."

47. Defendant DCSB knew or should have known that Defendant Edwards was not keeping accurate crime records regarding Duval Schools. For example, an August 10, 2016 First Coast News article bears the headline: "Former Duval Schools Officers Speak Out Against Department."

48. The article references a former Officer named John Hardin, and states: "During part of his tenure with Duval School Police, he worked at Lake Shore Middle School and says he was instructed not to arrest students when he thought a student should have been arrested. He says a school district policy prevented him from making an initial arrest when a student battered a teacher."

49. The above article states further: "It's going to get people hurt," Hardin says. "It's going to get students hurt. It's going to get faculty hurt."

50. Senior leadership at DCSB knew or should have known about the problems identified in the 2016 First Coast News story. For example, the article states: "The superintendent [Dr. Nikolai Viti] has touted the district's declining arrest numbers. He too declined multiple requests to be interviewed for this story."

51. Defendant DCSB and Defendant Edwards failed to report accurate crime data to the Florida Department of Law Enforcement.

52. Defendant DCSB and Defendant Edwards failed to report accurate crime data in School Environmental Safety Incident Reporting.

53. Defendant DCSB and Defendant Edwards' underreporting of crime was part of a scheme to convince taxpayers, the State government, and local government that the Duval County School Police force was effective, efficient, and meeting its responsibilities.

54. Defendant DCSB failed to correctly report SESIR incidents numbering over 2,000.

55. Joerod Adams was an attendee at the subject Raines versus Lee football game.

56. In the stands during the game, Joerod Adams and Robert Howard got into a fight.

57. Joerod Adams was ejected from the stadium by Duval School Police.

58. Robert Howard was ejected from the stadium by the Duval School Police.

59. A Duval School Police Officer intended to either trespass or arrest Joerod Adams.

60. At that time, Defendant Edwards intervened, and in conformity with the scheme to show a low number of criminal infractions, the Duval School Police Officer was instructed by Defendant Edwards to neither trespass nor arrest Joerod Adams.

61. Joerod Adams was not arrested or trespassed because Defendant DCSB and Defendant Edwards did not want to create a record that any criminal activity had occurred.

62. Moments after the football game ended, Robert Howard shot Joerod Adams in the head in a campus courtyard adjacent to the football stadium, killing him instantly. Plaintiff Khlayah Wright was an innocent bystander and was shot by a stray bullet.

63. Defendant Edwards, acting under color of state law, deprived Plaintiff Khlayah Wright of rights protected under the federal constitution, or federal laws. Specifically, Defendant Edwards deprived Khlayah Wright of her Fourteenth Amendment rights through policies, customs, and practices which deprived her of life, liberty, or property.

64. Defendant Edwards was guilty of a reckless or deliberately indifferent scheme of refusing to arrest wrongdoers to the detriment of the reasonable safety of youths at Duval County School events, including the safety of Plaintiff Khlayah Wright, by consciously failing to take actions to protect the youths, including Plaintiff Khlayah Wright.

65. This scheme included consciously refusing to trespass and/or arrest Joerod Adams and Robert Howard during the initial fight. This scheme of keeping reported arrests and crimes low resulted in the foreseeable escalation of the initial fight and got innocent students hurt. As a direct and proximate result of Defendant Edwards' reckless and deliberate indifference, Plaintiff suffered harms and losses including violation of her constitutional rights.

66. Defendant Edwards' policy or custom of underreporting criminal activity, discouraging arrests, and "un-arresting" certain individuals, including Joerod Adams, created a dangerous condition at the subject football game, which was a proximate cause of Plaintiff Khlayah Wright's injuries and deprivation of constitutional rights.

**WHEREFORE**, Plaintiff Khlayah Wright demands judgment in her favor for economic and non-economic damages, trial by jury, attorneys fees, and any other relief deemed appropriate.

## COUNT VI – 42 U.S.C. § 1983 Civil Rights Action (Monell Claim)
### (Wright v. DCSB)

67. Plaintiff re-alleges paragraphs 1-24 as if fully set out herein.

68. As previously alleged, it was the policy and custom of Defendant Duval County School Board to inadequately report actionable offenses and purposefully maintain inaccurate records of criminal activity at Duval County Schools.

69. A grand jury investigated Defendant DCSB and Defendant Edwards and found: "Chief Micheal P. Edwards, has actually issued both written and verbal orders to the members of his department to intentionally mislabel and fail to report crimes."

70. Defendant DCSB knew or should have known that Defendant Edwards was not keeping accurate crime records regarding Duval Schools. For example, an August 10, 2016 First Coast News article bears the headline: "Former Duval Schools Officers Speak Out Against Department."

71. The article references a former Officer named John Hardin, and states: "During part of his tenure with Duval School Police, he worked at Lake Shore Middle School and says he was instructed not to arrest students when he thought a student should have been arrested. He says a school district policy prevented him from making an initial arrest when a student battered a teacher."

72. The above article states further: "It's going to get people hurt," Hardin says. "It's going to get students hurt. It's going to get faculty hurt."

73. Senior leadership at Defendant DCSB knew or should have known about the problems identified in the 2016 First Coast News story. For example, the article states: "The superintendent [Dr. Nikolai Viti] has touted the district's declining arrest numbers. He too declined multiple requests to be interviewed for this story."

9

74. Defendant DCSB and Defendant Edwards failed to report accurate crime data to the Florida Department of Law Enforcement.

75. Defendant DCSB and Defendant Edwards failed to report accurate crime data in School Environmental Safety Incident Reporting.

76. Defendant DCSB and Defendant Edwards' underreporting of crime was part of a scheme to convince taxpayers, the State government, and the local government that the Duval County School Police force was effective, efficient, and meeting its responsibilities.

77. Defendant DCSB failed to correctly report SESIR incidents numbering over 2,000.

78. These actions were done pursuant to the longstanding policies, practices and/or customs of Defendant DCSB and its police force.

79. Joerod Adams was an attendee at the subject Raines versus Lee football game.

80. In the stands during the game, Joerod Adams and Robert Howard got into a fight.

81. Joerod Adams was ejected from the stadium by Duval School Police.

82. Robert Howard was ejected from the stadium by the Duval School Police.

83. A Duval School Police Officer intended to either trespass or arrest Joerod Adams.

84. At that time, Defendant Edwards intervened, and in conformity with the scheme to show a low number of criminal infractions, the Duval School Police Officer was instructed by Defendant Edwards to neither trespass nor arrest Joerod Adams.

85. Joerod Adams was not arrested or trespassed because Defendant DCSB and Defendant Edwards did not want to create a record that any criminal activity had occurred.

86. Moments after the football game ended, Robert Howard shot Joerod Adams in the head in a campus courtyard adjacent to the football stadium, killing him instantly. Plaintiff Khlayah Wright was an innocent bystander and was shot by a stray bullet.

87. Defendant DCSB, through its longstanding policies, practices and/or customs, deprived Plaintiff Khlayah Wright of rights protected under the federal constitution, or federal laws. Specifically, Defendant DCSB's policies, practices and/or customs demonstrated a deliberate indifference on the part of Defendant DCSB and its policy makers, including Defendant Edwards, to the constitutional rights of the students and teachers of the Duval County Schools and were the cause of the violations of Khlayah Wright's Fourteenth Amendment rights which deprived her of life, liberty, or property.

88. The conduct of Defendant DCSB in developing the aforementioned scheme and policy is, and at all times material was, recklessly or deliberately indifferent to the reasonable safety of youths at Duval County School events, including the safety of Plaintiff Khlayah Wright, by consciously failing to take actions to protect the youths, including Plaintiff Khlayah Wright.

89. This scheme included consciously refusing to trespass and/or arrest Joerod Adams and Robert Howard during the initial fight. This scheme of keeping reported arrests and crimes low resulted in the foreseeable escalation of the initial fight and got innocent students hurt. As a direct and proximate result of Defendant DCSB's reckless and deliberate indifference, Plaintiff suffered harms and losses including violation of her constitutional rights.

90. Defendant DCSB's policy and/or custom of underreporting criminal activity, discouraging arrests, and "un-arresting" certain individuals, including Joerod Adams, created a dangerous condition at the subject football game, which was a proximate cause of Plaintiff Khlayah Wright's injuries and deprivation of constitutional rights.

**WHEREFORE**, Plaintiff Khlayah Wright demands judgment in her favor for economic and non-economic damages, trial by jury, attorneys fees, and any other relief deemed appropriate.

                                **SPOHRER & DODD, P.L.**

                                /s/MATTHEW W. SPOHRER

                                ROBERT F. SPOHRER, ESQUIRE
Florida Bar No.: 184500
MATTHEW W. SPOHRER, ESQUIRE
Florida Bar No: 0062534
76 S. Laura Street, #1701
Jacksonville, FL 32202
Phone: (904) 309-6500
Facsimile: (904) 309-6501
Email:   rspohrer@sdlitigation.com
          jheape@sdlitigation.com
          mspohrer@sdlitigation.com
          eservice@sdlitigation.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was e-filed and e-served through the State of Florida e-portal system to Gaby Young, Esquire and Brett Mereness, Esquire; Office of General Counsel; 117 W. Duval St., Suite 480, Jacksonville, FL 32202, Attorneys for Defendant Duval County School Board, this 24th day of August, 2022 at the following e-mail addresses:

gcyoung@coj.net
hdugan@coj.net
brettm@coj.net
bosburn@coj.net

                                **/s/Matthew W. Spohrer**
                                Attorney